No. 85-523

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

JUNE MEAD,

Plaintiff and Appellant,

-vs-

THOMAS M. McKITTRICK, individually
and as a District Judge of the Eighth
Judicial District of the State of
Montana; RICHARD G. GASVODA, indiv-
idually and as a member of the Board
of County Commissioners of Cascade
County, Montana; JACK T. WHITAKER and
PATRICK L. RYAN, as members of the
Board of County Commissioners; and
THE COUNTY OF CASCADE, Montana,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James P. Reynolds argued, Helena, Montana

For Respondents:

John Bobinski, Dept. of Admin., argued for Judge
McKittrick, Helena, Montana
Marra, Wenz, Johnson & Hopkins; Charles R. Johnson
argued for County and Commissioners, Great Falls,
Montana

Submitted: June 3, 1986

Decided: October 21, 1986

Filed: OCT 21 1986

Ethel M. Harrison
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

June Mead appeals from an order of the Eighth Judicial District Court, Cascade County, granting defendants' motions to dismiss Mead's wrongful discharge suit.

We affirm.

June Mead raises two issues for our review:

1. Is a District Court judge immune, under § 2-9-112(2), MCA, from suit for the summary discharge of his predecessor's personal secretary?

2. Are the county and county commissioners immune, under § 2-9-112(1), MCA, from a suit arising from an act of the judiciary?

June Mead began working for Cascade County as a deputy clerk in the Clerk of Court's office in 1976. In 1979, Mead temporarily replaced Judge Coder's personal secretary, who was on maternity leave. When the personal secretary decided against returning to work, her position was opened for applications. Mead applied and was hired for the position.

Mead continued to work for Judge Coder as his personal secretary until he resigned in late 1983. Thomas McKittrick was appointed to replace Judge Coder. Immediately upon taking office, Judge McKittrick informed Mead of his intention to open her position for applications. Mead applied but was not granted an interview. Judge McKittrick terminated Mead's employment on January 6, 1984.

On January 17, 1984, Judge McKittrick sent Mead a letter giving his reasons for the termination. Mead asserts that the reasons in the letter merely outline work patterns she had established under Judge Coder. Mead believes her termination was unfair because Judge McKittrick had told her to continue her previous duties.

2

On July 6, 1984, Mead filed a complaint against Judge McKittrick, the members of the Cascade County Board of Commissioners and Cascade County, alleging: (1) violation of her right to due process of the law, (2) breach of contract, (3) breach of implied covenant of good faith and fair dealing, (4) wrongful discharge, and (5) fraud.

Defendants responded with motions to dismiss, alleging immunity among their defenses. Following oral argument on the issues, the District Court granted defendants' motions. The trial judge held that Mead was a court employee rather than a county employee, and that her employment was "at-will." Mead appealed the dismissal of her cause but dropped her breach of contract and fraud claims.

Issue No. 1

Is a district court judge immune, under § 2-9-112(2), MCA, from suit for the summary discharge of his predecessor's personal secretary?

Historically, judges have enjoyed absolute immunity for judicial acts. Pierson v. Ray (1967), 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288, 294. Montana has codified the doctrine of judicial immunity in § 2-9-112(2), MCA, which provides:

> A member, officer, or agent of the judiciary is immune from suit for damages arising from his lawful discharge of an official duty associated with judicial actions of the court.

The doctrine clothes Montana district courts with inherent and statutory powers to do all that is necessary to render their jurisdiction effective. Board of Commissioners of Flathead County v. Eleventh Judicial District Court (1979), 182 Mont. 463, 470, 597 P.2d 728, 732. The appointment and

3

removal of key court employees is an effective judicial action.

The public policy of judicial immunity safeguards principled and independent decision-making. The contributions of a personal secretary are a significant part of judicial efficiency, which is why district court judges have the exclusive authority to choose their own personal secretaries. Section 3-1-113, MCA, is a general grant of power to the courts: "[W]hen jurisdiction is . . . conferred on a court or judicial officer, all the means necessary for the exercise of such jurisdiction are also given." This section authorizes the district court to hire the employees necessary to carry out statutorily-mandated duties.

We can see no violation of public policy in a newly-elected or appointed district judge selecting his own personal secretary. Indeed, public policy is best served when newly-elected officials are free to select their own key staff members. Holley v. Preuss (1977), 172 Mont. 422, 427, 564 P.2d 1303, 1306. The efficient and proper administration of justice requires that judges have personal secretaries with whom they can work professionally and confidentially. As such, the personal secretary occupies a distinct and unique status among district court employees.

"[T]he modern judge differs from his predecessor in that he must rely more on his staff . . . A judge's institutional personality, therefore, extends beyond his person." Forrester v. White (7th Cir. 1986), 792 F.2d 647, 654. "[I]f an employee's duties are intimately related to the functioning of the [judicial] process, then personnel decisions regarding that employee are also part of the process." Forrester, 792 F.2d at 655.

4

Immediately upon appointment, Judge McKittrick began an orderly transition into judicial office. Judge McKittrick opened Mead's position for new applicants and informed Mead of this fact.

As we have stated earlier: "The immunity statute applies to judicial acts with no stated limitation." Knutson v. State of Montana (Mont. 1984), 683 P.2d 488, 490, 41 St.Rep. 1258, 1260. Such acts naturally include the power to employ key court personnel.

In conclusion, Mead's discharge was a judicial act, which is immune under § 2-9-112(2), MCA.


Issue No. 2

Are the county and county commissioners immune, under § 2-9-112(1), MCA, from a suit arising from an act of the judiciary?

Section 2-9-112(1), MCA, provides:

> The state and other governmental units are immune from suit for acts or omissions of the judiciary.

In Knutson, 683 P.2d at 490, 41 St.Rep. at 1260, we held that "[Section 2-9-112(1)] applies to protect the state and governmental agencies whenever the judicial power of the state is put to use in a judicial action." Since Mead's discharge was a judicial act, the county and its commissioners cannot be liable, because the legislature has expressly immunized them. Furthermore, the immunity of the defendants is dispositive of any subordinate issues raised by Mead.

Affirmed.

Chief Justice

5

We concur:

_____

John Conway Harrison

_____

_____

John C. Sheehy

_____

_____

R. C. Gulbrandson

_____

Justices

Mr. Justice Frank B. Morrison, Jr. dissents to the majority opinion.

The cases are divided on the question of whether judicial immunity extends to acts of administration. The terminating of an employee is clearly an act of administration. Although I realize there is support for the position of the majority I feel that the better public policy is to recognize that judges, in the treatment of their personnel, are subject to the same rules to which others in society are subject.

Further, I feel that the majority opinion has not adequately treated the issue of whether the county is directly responsible for the plaintiff's discharge. One important fact omitted from the majority opinion is that Judge McKittrick's decision to terminate the plaintiff was reviewed and ultimately approved by the county. While the county is immune for Judge McKittrick's acts, the county is responsible for its own conduct.

June Mead was employed by Cascade County as a deputy clerk of court in 1976. In 1979 she was assigned to Judge Coder as a personal secretary. When Judge Coder decided her services were no longer needed in the judge's office, the county had the option to reassign her to another position.

We should keep in mind that judgment was here entered on the pleadings. No discovery has been done and judicial intervention at this juncture is premature.

I would reverse and remand to allow discovery to go forward.

Justice

Mr. Justice William E. Hunt, Sr., dissenting:

I join in the dissent of Mr. Justice Frank B. Morrison. I would further dissent and add that because the majority does not adequately treat the issue of the county's responsibility in this matter, the county's conduct as an employer is improperly ignored.

The county is responsible for its own conduct. It did ratify Judge McKittrick's decision to terminate plaintiff's employment. As such, § 2-9-112, MCA, is not applicable here. The county, as plaintiff's employer should be held accountable for express or implied promises made to plaintiff regarding her employment.

The county paid plaintiff's salary, provided her with health insurance benefits and issued a county employee's manual to her. She was given repeated pronouncement by various county officials that she indeed was a county employee. Understandably she assumed she was protected under terms similar to those in the employee manual.

These objective manifestions of her status as a county employee entitle her to an opportunity to present evidence on her allegations that the county breached its duty of good faith and fair dealing, denied her due process and wrongfully discharged her.

The District Court's grant of summary judgment to defendants wrongly denied plaintiff this opportunity. I would reverse and remand this case to allow discovery to go forward.

_____
Justice

- 8 -